# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: SYNCHRONY FINANCIAL DERIVATIVE LITIGATION | Lead Case No. 3:19-cv-00130-VAB |

### STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated December 12, 2023 ("Stipulation"), is made and entered into by the following parties, each by and through their respective counsel: (1) plaintiffs in the above-captioned consolidated stockholder derivative action (the "Action") pending in the United States District Court for the District of Connecticut (the "Court"), Jeffrey Gilbert ("Gilbert") and Maureen Aldridge ("Aldridge") (the "Plaintiffs"); (2) individual defendants Margaret M. Keane, Brian D. Doubles, Paget L. Alves, Arthur W. Coviello, Jr., William W. Graylin, Roy A. Guthrie, Richard C. Hartnack, Jeffrey G. Naylor, Laurel J. Richie, and Olympia J. Snowe (each a "Defendant," and collectively, the "Individual Defendants"); and (3) nominal defendant Synchrony Financial ("Synchrony" or the "Company," and together with the Individual Defendants, "Defendants") (the "Parties" refers collectively to Plaintiffs and Defendants).

This Stipulation, subject to the approval of the Court, is intended to fully, finally, and forever compromise, resolve, release, settle, discharge, and dismiss any and all Released Claims (as defined herein) upon the terms and subject to the conditions set forth herein.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that, *inter alia*, beginning January 19, 2018, at least, the Individual Defendants breached their fiduciary duties by issuing and/or causing the Company to issue false and misleading statements and omissions to the public regarding the pushback Synchrony was receiving from its retail partners based on: (1) adjustments the Company had made to its underwriting practices; and (2) Synchrony making less credit available to certain Company

1

borrowers. Plaintiffs also allege that the Individual Defendants caused Synchrony to repurchase its own stock at artificially inflated prices while certain of them engaged in insider sales of Company stock.   Defendants have denied and continue to deny each and all of the claims and allegations of wrongdoing asserted in the Action.

### A.      The Securities Class Action

On November 2, 2018, plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund filed a securities class action in the Court against the Company and defendants Margaret M. Keane and Brian D. Doubles for alleged violations of the Securities Exchange Act of 1934 (the "Exchange Act"), alleging the same false and misleading statements that are alleged in the Action, captioned *In re: Synchrony Financial Securities Litigation*, Case No. 3:18-cv-01818 (the "Securities Class Action").

On April 5, 2019, plaintiffs in the Securities Class Action filed an amended complaint, which the Court dismissed in its entirety, with prejudice, on March 31, 2020. (Securities Class Action, ECF Nos. 78, 154). The case was appealed to the United States Court of Appeals for the Second Circuit (the "Second Circuit"), which partially reversed the Court's dismissal order. (Securities Class Action, ECF No. 160).  Specifically, the Second Circuit ruled that the Complaint had plausibly alleged the falsity of one statement made by Defendant Keane on January 19, 2018, that Synchrony "was not getting any pushback on credit." *Id.*   In response, defendants filed a renewed motion to dismiss as to the January 19, 2018 statement. (Securities Class Action, ECF No. 166). On February 11, 2022, the Court denied defendants' renewed motion to dismiss, except that the Court upheld only one of plaintiffs' alleged corrective disclosures (a July 12, 2018 Wall Street Journal article), and dismissed the remaining alleged corrective disclosures. (Securities Class Action, ECF No. 171).

On August 4, 2023, the Court issued an order granting final approval of the settlement of the Securities Class Action. (Securities Class Action, ECF No. 244).

B.     **The Action**

On January 28, 2019, plaintiff Gilbert filed a Verified Shareholder Derivative Complaint on behalf of Synchrony in the Court against the Individual Defendants alleging breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Sections 14(a), 10(b), and 20(a) of the Exchange Act, originally captioned *Gilbert v. Keane, et al.*, Civil Action No. 3:19-cv-00130 (VAB) (the "*Gilbert* Action"). (ECF No. 1).

On March 11, 2019, plaintiff Aldridge filed a Verified Shareholder Derivative Complaint on behalf of Synchrony against the Individual Defendants alleging breaches of fiduciary duty, unjust enrichment, waste of corporate assets, and violations of Sections 14(a), 10(b), and 20(a) of the Exchange Act, captioned *Aldridge v. Keane, et al.*, Civil Action No. 3:19-cv-00369 (VAB) (the "*Aldridge* Action"). (*Aldridge* Action, ECF No. 1).

On March 25, 2019, the Court ordered that any subsequently filed, removed, or transferred actions that were related to the claims asserted in the Securities Class Action be consolidated for all purposes and further ordered that the *Gilbert* and *Aldridge* Actions be consolidated with the Securities Class Action. (Securities Class Action, ECF Nos. 73, 74, 75). Also on March 25, 2019, Notices of Consolidation were signed by the Clerk of Court notifying the Parties that the *Gilbert* and *Aldridge* Actions were consolidated with the Securities Class Action. (Securities Class Action, ECF Nos. 74, 75).

On April 12, 2019, plaintiffs Gilbert and Aldridge filed a motion for relief from consolidation, wherein they moved the Court to enter an order or, in the alternative, to amend its March 25, 2019 order to, *inter alia*, sever the *Gilbert* Action and the *Aldridge* Action from the

Securities Class Action, and separately consolidate the *Gilbert* Action and the *Aldridge* Action under a new caption. (Securities Class Action, ECF No. 80).

On March 26, 2020, the Court granted the motion, severing the *Gilbert* Action and *Aldridge* Action from the Securities Class Action and separately consolidating them under the new caption *In re Synchrony Financial Derivative Litigation*, Lead Case No. 3:19-cv-00130-VAB (D. Conn.) (the "Action") (Securities Class Action, ECF No. 152), (ECF No. 10).

On December 3, 2020, the Parties filed a joint motion to stay the Action pending final resolution of the Securities Class Action, which the Court granted on December 4, 2020. (ECF Nos. 15, 16).

On August 6, 2023, in light of the Court's order granting final approval of the Securities Class Action settlement, the Court lifted the stay in the Action and directed the Parties to file a status report by August 11, 2023, addressing the impact of the settlement agreement and whether further action was needed by the Court. (ECF No. 17).

On August 11, 2023, the Parties filed a joint status report that informed the Court that: (1) the Parties had reached a binding memorandum of understanding to settle the litigation; (2) the Parties were working on the full settlement agreement and supporting papers; (3) the Parties intended to file a preliminary approval motion within 45 days; and (4) the Parties agreed that there was no further action needed by the Court at that time. (ECF No. 18).

On October 16, 2023, the Court entered an order for the Parties to file another status report addressing the status of the settlement agreement by October 20, 2023. (ECF No. 19).

On October 20, 2023, the Parties filed a joint status report that informed the Court that the Parties needed more time and intended to file a preliminary approval motion within 30 days. (ECF No. 20).

C.      Settlement Negotiations

On March 4, 2023, Plaintiffs sent a settlement demand letter to Defendants that, *inter alia*, proposed a settlement framework that included a comprehensive set of corporate governance reforms designed to address what Plaintiffs allege were the governance deficiencies that resulted in the wrongdoing alleged in the Action.

On July 18, 2023, the Parties executed a memorandum of understanding (the "Memorandum of Understanding"), that memorialized the terms of the settlement of the Action (the "Settlement"), the terms of which, including the corporate governance reforms that Synchrony agreed to adopt, implement, and maintain as consideration for the Settlement (the "Reforms"), are set forth in full in this Stipulation.

Following the Parties' agreement in principle on the substantive terms of the settlement and execution of the Memorandum of Understanding, the Parties attended a mediation in New York, New York on August 8, 2023 with a nationally reputed mediator, Michelle Yoshida, Esq. of Phillips ADR (the "Mediator") to negotiate the attorneys' fees and expenses that would be payable by Synchrony's insurers in recognition of the substantial benefits achieved through the settlement. During the mediation, the Parties accepted the Mediator's double-blind proposal for Synchrony's insurers to pay $885,000.00 in attorneys' fees and expenses to Plaintiffs' Counsel, subject to Court approval.

II.     PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiffs believe that the derivative claims in the Action have substantial merit, and Plaintiffs' entry into this Stipulation is not intended to be and shall not be construed as an admission or concession concerning the relative strength or merit of the claims alleged in the Action. However, Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the significant

risk, expense, and length of continued proceedings necessary to prosecute the derivative claims against the Individual Defendants through trial and possible appeals. Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs' Counsel are also mindful of the inherent problems of pleading the futility of a pre-suit litigation demand in derivative litigation, and the possible defenses to the claims alleged in the Action.

Plaintiffs' Counsel have conducted extensive investigation and analysis, including, *inter alia*: (i) reviewing and analyzing Synchrony press releases, public statements, and filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) reviewing and analyzing securities analysts' reports and advisories and media reports about the Company; (iii) reviewing and analyzing the pleadings and orders in the Securities Class Action; (iv) researching the applicable law with respect to the claims alleged and the potential defenses thereto; (v) preparing and filing the complaints in the Action; (vi) researching and evaluating factual and legal issues relevant to the claims; (vii) reviewed tens of thousands of pages of confidential internal corporate documents produced by Defendants; (viii) engaging in settlement negotiations with Defendants' counsel regarding the specific facts, and perceived strengths and weaknesses of the Action, and other issues in an effort to facilitate negotiations; (ix) researching the Company's corporate governance structure in connection with settlement efforts; (x) preparing comprehensive settlement demands and modified demands over the course of the Parties' settlement negotiations; (xi) negotiating and drafting the Memorandum of Understanding; (xii) participating in the full-day mediation; and (xiii) negotiating and drafting this comprehensive Stipulation.

Based on Plaintiffs' Counsel's thorough review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, Plaintiffs' Counsel believe that the

Settlement set forth in this Stipulation is fair, reasonable, and adequate, and confers substantial benefits upon Synchrony. Based upon Plaintiffs' Counsel's evaluation, Plaintiffs have determined that the Settlement is in the best interests of Synchrony and have agreed to settle the Action upon the terms and subject to the conditions set forth herein.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants deny that they have committed or engaged in any wrongdoing or violation of law whatsoever. Defendants have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs in the Action. The Individual Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged in the Action. Nonetheless, Defendants have concluded that it is desirable for the Action to be fully and finally settled in the matter and upon the terms and conditions set forth in this Stipulation. Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this. Defendants have, therefore, determined that it is in the best interests of Synchrony for the Action to be settled in the manner and upon the terms and conditions set forth in this Stipulation.

Neither this Stipulation, nor any of its terms or provisions, shall be construed as an admission or evidence of the violation of any law, validity of any of the Released Claims, or an admission by any Defendant of any fault, wrongdoing, or concession of liability or non-liability whatsoever. Moreover, the fact that the Company has agreed to implement and maintain changes to its corporate governance policies and practices shall not be construed as an admission that any such policies or practices are legally required, or that the absence of such policies or practices would constitute a failure of compliance, a breach of any duty, or any other wrongdoing.

IV.    **INDEPENDENT DIRECTOR APPROVAL**

The independent members of Synchrony's Board unanimously approved a resolution reflecting its determination, in a good faith exercise of its business judgment, that the Settlement and each of its terms, are fair, reasonable, and in the best interests of Synchrony and its stockholders, and that the Settlement confers substantial benefits upon Synchrony and its stockholders. Synchrony acknowledges and agrees that the filing, pendency, and settlement of the Action was a material and precipitating cause of the Company's decision to adopt, implement, and maintain the Reforms. Synchrony also acknowledges and agrees that the Reforms confer substantial benefits to Synchrony and Synchrony's shareholders.

V.    **TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned counsel for the Parties herein, in consideration of the benefits flowing to the Parties from the Settlement, and subject to the approval of the Court, that the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice and with full preclusive effect as to all Parties, upon and subject to the terms and conditions of this Stipulation, as set forth below.

1.    **DEFINITIONS**

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Action" means the above-captioned derivative action pending in the United States District Court for the District of Connecticut.

1.2    "Board" means the Board of Directors of Synchrony.

1.3    "Court" means the United States District Court for the District of Connecticut.

1.4     "Current Synchrony Stockholders" means any Person or Persons who are record or beneficial owners of Synchrony stock as of the date of this Stipulation and who continue to own Synchrony stock through the date of the Settlement Hearing (defined herein), excluding the Individual Defendants, the officers and directors of Synchrony, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Individual Defendants has or has had a controlling interest.

1.5     "Defendants" means the Individual Defendants and nominal defendant, Synchrony.

1.6     "Defendants' Counsel" means Cleary Gottlieb Steen & Hamilton LLP.

1.7     "Defendants' Released Claims" means any and all manner of claims or causes of action (including known and Unknown Claims), whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule, regulation, ordinance, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, arising out of the commencement, litigation, or settlement of the Action. "Defendants' Released Claims" shall not include claims to enforce the terms of the Stipulation and/or the Judgment, and shall not include claims, if any, that any party may have against its insurer(s) with respect to any payment obligations under the Settlement.

1.8     "Defendants' Released Persons" means Plaintiffs, Plaintiffs' Counsel, and all Synchrony stockholders (solely in their capacity as Synchrony stockholders).

1.9     "Effective Date" means the date by which all of the conditions specified in Section V (¶ 6.1) have been met and have occurred.

1.10    "Final" means when the last of the following, with respect to the Judgment approving this Stipulation, shall have occurred: (1) the expiration of the time to file a notice of

9

appeal from the Judgment without a notice of appeal having been filed; or (2) if an appeal has been

filed, the court of appeals has either affirmed the Judgment or dismissed that appeal and the time

for any reconsideration or further appellate review has passed; or (3) if a higher court has granted

further appellate review, that court has either affirmed the underlying Judgment or affirmed the

decision by the court of appeals affirming the Judgment or dismissing the appeal.  For purposes of

this paragraph, an "appeal" shall not include any appeal that concerns only the issue of attorneys'

fees and expenses or the payment of service awards to Plaintiffs.  Any proceeding or order, or any

appeal or petition for review pertaining solely to the application of attorneys' fees, costs, or

expenses, and/or service awards to Plaintiffs shall not in any way delay or preclude the Judgment

from becoming Final.

      1.11    "Individual Defendants" means Margaret M. Keane, Brian D. Doubles, Paget L.

Alves, Arthur W. Coviello, Jr., William W. Graylin, Roy A. Guthrie, Richard C. Hartnack, Jeffrey

G. Naylor, Laurel J. Richie, and Olympia J. Snowe.

      1.12     "Immediate Family Members" means children, stepchildren, parents, stepparents,

spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law,

and sisters-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner

in a state-recognized domestic relationship or civil union.

      1.13    "Judgment" means the Order and Final Judgment entered by the Court that

dismisses the Action pursuant to the Settlement, substantially in the form of Exhibit E attached

hereto.

      1.14    "Notice" means the Notice of Pendency and Proposed Settlement of Stockholder

Derivative Action, substantially in the form of Exhibit C attached hereto.

      1.15    "Parties" means Plaintiffs, Individual Defendants, and Synchrony.

1.16    "Person" means any natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative, or assign of any of the foregoing.

1.17    "Plaintiffs" means Jeffrey Gilbert and Maureen Aldridge.

1.18    "Plaintiffs' Counsel" means The Brown Law Firm, P.C., The Rosen Law Firm, P.A., and Faxon Law Group LLC.

1.19    "Plaintiffs' Releasing Parties" means Plaintiffs, for themselves and derivatively on behalf of Synchrony, Current Synchrony Stockholders, derivatively on behalf of Synchrony, and Synchrony, and their respective agents, spouses, heirs, executors, administrators, personal representatives, predecessors, successors, transferors, transferees, representatives, and assigns, in their capacities as such, and any Person or entity that could assert any of the Released Claims on their behalf.

1.20    "Preliminary Approval Order" means the [Proposed] Preliminary Approval Order entered by the Court that preliminarily approves the Settlement, authorizes the form and manner of providing notice of the Settlement to Current Synchrony Stockholders, and sets a date for the Settlement Hearing, substantially in the form of Exhibit B attached hereto.

1.21    "Reforms" means the corporate governance reforms set forth in Exhibit A attached hereto, which the Company shall adopt, implement, and maintain, pursuant to and in accordance with this Stipulation.

1.22    "Released Claims" means any and all claims or causes of action (including known and Unknown Claims), including, but not limited to, debts, demands, rights, interests, actions,

11

suits, causes of action, cross-claims, counter-claims, charges, judgments, obligations, setoffs, or liabilities for any obligations of any kind whatsoever (however denominated), for fees, costs, penalties, damages whenever incurred, and liabilities of any nature whatsoever (including, without limitation, direct or indirect claims or demands for rescission, damages, interest, attorneys' fees, and any other costs, expenses, or liabilities whatsoever, including joint and several), whether based on federal, state, local, statutory or common law, in equity, or on any other law, rule, regulation, ordinance, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, arising from any act or omission alleged or claims asserted in the Action or that could have been alleged or asserted on behalf of Synchrony derivatively, including those that were threatened, asserted, or could have been asserted by any of Synchrony's stockholders derivatively, or that Synchrony could have asserted directly, in any court, tribunal, forum or proceeding, against any of the Defendants or the Released Persons. "Released Claims" shall not include any claims to enforce the Stipulation, Judgment, or any other document memorializing the Settlement.

1.23    "Released Persons" means Defendants' Counsel, each of Defendants, and each and all of Defendants' current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, trustees, trusts, employees, Immediate Family Members, insurers, reinsurers, and attorneys.

1.24    "Settlement" means the settlement and compromise of the Action as provided for in this Stipulation.

1.25    "Settlement Hearing" means the hearing set by the Court to consider final approval of the Settlement.

1.26    "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Stockholder Derivative Action, substantially in the form of Exhibit D attached hereto.

1.27    "Synchrony" means Synchrony Financial.

1.28    "Unknown Claims" means any Released Claim(s) that any of the Plaintiffs' Releasing Parties does not know of or suspect to exist in his, her, or its favor at the time of the release of the Released Persons, including claims that, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons or might have affected his, her, or its decision whether to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Plaintiffs' Releasing Parties shall expressly waive and relinquish, and each Current Synchrony Stockholder shall be deemed to have and by operation of the Judgment shall have expressly waived and relinquished to the fullest extent permitted by law, the provisions, rights and benefits conferred by and under California Civil Code § 1542, and any other law of the United States or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Plaintiffs' Releasing Parties acknowledge that they and Current Synchrony Stockholders may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to the subject matter of the Released Claims, but it is the intention of the Parties that the Plaintiffs' Releasing Parties and all Current Synchrony Stockholders shall be deemed to

and by operation of the Judgment shall completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all Released Claims, known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which do now exist, or heretofore existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, and without regard to the subsequent discovery of additional or different facts. The Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of the Stipulation of which this release is a part.

## 2.     TERMS OF THE SETTLEMENT

2.1     Within ninety (90) days of issuance of a final order approving the settlement of the Action by the Court, the Board shall adopt resolutions and amend Board committee charters, corporate governance documents, and/or the Company's Bylaws[1] to ensure the adoption, implementation, and maintenance of the Reforms, which are set forth in Exhibit A attached hereto, and which shall remain in effect for no less than three and a half (3.5) years from the date of implementation.

2.2     Synchrony acknowledges and agrees that the filing, pendency, and settlement of the Action was a material and precipitating cause of the Company's decision to adopt, implement, and maintain the Reforms. Synchrony also acknowledges and agrees that the Reforms confer substantial benefits to Synchrony and Synchrony's shareholders.

## 3.     APPROVAL AND NOTICE

3.1     Within ten (10) business days of the execution of this Stipulation, the Plaintiffs shall submit this Stipulation together with its exhibits to the Court and shall jointly apply for entry

---

[1] The term "Bylaws" refers to the Amended and Restated Bylaws of Synchrony Financial, As Amended on October 27, 2016.

of the Preliminary Approval Order, substantially in the form of Exhibit B attached hereto, requesting: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the form and manner of providing notice of the Settlement to Current Synchrony Stockholders; and (iii) a date for the Settlement Hearing.

3.2     Within twenty-one (21) days after the entry of the Preliminary Approval Order, Synchrony shall: (1) post a copy of the Notice and the Stipulation (and exhibits thereto) on the Investor Relations page of the Company's website; (2) publish the Summary Notice in *Investor's Business Daily*; and (3) publish the Summary Notice in *USA Today*. At least thirty (30) days before the Settlement Hearing, Synchrony shall also update the litigation disclosure in its first filing with the SEC on Form 10-Q or Form 10-K after the entry of the Preliminary Approval Order to advise of the status of the Settlement and that the Notice and Stipulation (and exhibits thereto) can be found on the Investor Relations page of Synchrony's website. Synchrony shall be solely responsible for paying the costs and expenses related to providing notice of the Settlement set forth in this paragraph or as otherwise required by the Court.

3.3     Pending the Court's determination as to final approval of the Settlement, Plaintiffs and Current Synchrony Stockholders are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Persons. The Parties request that the current proceedings in the Action, including any deadlines or filing requirements, except to consummate the Settlement, be suspended.

## 4.     ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

4.1     In consideration of the substantial benefits conferred upon Synchrony as a direct result of the Reforms and Plaintiffs' and Plaintiffs' Counsel's efforts in connection with the Action,

and subject to Court approval, the Company's insurers shall pay to Plaintiffs' Counsel, collectively, their attorneys' fees and costs in the amount of eight hundred eighty-five thousand dollars ($885,000.00) (the "Fee and Expense Amount").

4.2     Within thirty (30) days of the date of entry of the Preliminary Approval Order, Synchrony's insurers shall pay the Fee and Expense Amount to the escrow account of The Brown Law Firm, P.C. (the "Escrow Account"). The Fee and Expense Amount, to the extent approved by the Court, shall be released from the Escrow Account once the Court enters the Judgment and an order approving the Fee and Expense Amount—notwithstanding the existence of any collateral attacks on the Settlement, including, without limitation, any objections or appeals—by The Brown Law Firm, P.C. to each of the firms comprising Plaintiffs' Counsel. Plaintiffs' Counsel shall make no request to the Court for (and hereby release any right they may otherwise have to seek) attorneys' fees and/or costs beyond the Fee and Expense Amount. In no event shall Defendants or their insurers be obligated to pay any fees or costs to Plaintiffs' Counsel in excess of the Fee and Expense Award. Defendants, including Synchrony, shall have no responsibility for, and no liability with respect to, the allocation of the attorneys' fees and expenses awarded or distribution of attorneys' fees and expenses from the Escrow Account to Plaintiffs' Counsel.

4.3     In the event that the Judgment fails to become Final as defined in Section V (¶1.10), if a collateral attack is successful or the Settlement is otherwise terminated, or to the extent that the Court does not approve Plaintiffs' Counsel's application for an award of attorneys' fees and costs in the full amount of the Fee and Expense Amount, Plaintiffs' Counsel must refund the Fee and Expense Amount to the extent it is denied or reduced to Synchrony within thirty (30) days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction.

4.4     Plaintiffs' Counsel may apply to the Court for service awards of up to two thousand dollars ($2,000.00) for each of the two Plaintiffs to be paid from the Fee and Expense Amount in recognition of Plaintiffs' participation and effort in the prosecution of the Action (the "Service Awards"). Defendants shall not object to the application for the Service Awards.

4.5     The procedure for and the allowance or disallowance by the Court of any application by Plaintiffs' Counsel for fees and costs are not part of this Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. The Court's awarding of any fees and costs is not a necessary term of this Settlement, and it is not a condition of this Settlement that Plaintiffs' Counsel's application(s) for such fees and costs be approved by the Court in the amount of the Fee and Expense Amount or in any other amount whatsoever.

## 5.     RELEASES

5.1     Upon the Effective Date, the Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims against the Released Persons, individually on behalf of themselves, and derivatively on behalf of Synchrony, and on behalf of their respective agents, spouses, heirs, executors, administrators, personal representatives, predecessors, successors, transferors, transferees, representatives, and assigns, in their capacities as such. Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Persons with respect to any Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Claims against the Released Persons except to enforce the releases and other terms and conditions contained in the Settlement and/or the Judgment.

5.2     Upon the Effective Date, Defendants and Defendants' Counsel shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Defendants' Released Persons from Defendants' Released Claims. Defendants and Defendants' Counsel shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue Defendants' Released Persons with respect to any of Defendants' Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting Defendants' Released Claims against Defendants' Released Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or the Judgment.

## 6.     CONDITIONS OF SETTLEMENT; EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

6.1     The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

a.   Court approval of the content and method of providing notice of the proposed Settlement to Current Synchrony Stockholders, in all material respects in the form set forth as Exhibits C and D annexed hereto,  and the subsequent dissemination of the notice of the proposed Settlement to Current Synchrony Stockholders;

b.   Court entry of the Judgment, in all material respects in the form set forth as Exhibit E annexed hereto, approving the Settlement and dismissing the Action with prejudice, without awarding costs to any party, except as provided herein;

c.    payment of the Fee and Expense Amount in accordance with Section V (¶¶4.1–4.2); and

d.   the passing of the date upon which the Judgment becomes Final.

6.2    If any of the conditions specified above in Section V (¶6.1) are not met, then this Stipulation shall be canceled and terminated subject to Section V (¶6.3), unless counsel for the Parties mutually agree in writing to proceed with this Stipulation.

6.3    If for any reason the Effective Date of this Stipulation does not occur, or if this Stipulation is in any way canceled, terminated or fails to become Final in accordance with its terms: (a) all Parties shall be restored to their respective positions in the Action as of the date of this Stipulation; (b) all releases delivered in connection with this Stipulation shall be null and void, except as otherwise provided for in this Stipulation; (c) the Fee and Expense Amount paid to Plaintiffs' Counsel shall be refunded and returned within thirty (30) days; and (d) all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by a Party of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Action, or in any other action or proceeding. In such event, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose.

## 7.    MISCELLANEOUS PROVISIONS

7.1    The Parties: (i) acknowledge that it is their intent to consummate the Settlement; and (ii) agree to act in good faith and cooperate to take all reasonable and necessary steps to expeditiously effectuate and implement all terms and conditions of the Settlement. In the event

that any dispute arises between the Parties regarding such efforts, they shall attempt to resolve the dispute in good faith.

7.2     In the event that any part of the Settlement is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, the remaining terms and conditions of the Settlement shall remain intact.

7.3     The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action and any and all claims released herein.  The Settlement comprises claims that are contested and shall not be deemed an admission by any of the Parties as to the merits of any claim, allegation, or defense. Subject to, and conditional on, the Court's final approval of the Settlement contemplated herein, the Parties agree that each has complied fully with the applicable requirements of good faith litigation, the Action is being settled voluntarily by the Defendants, and that no action, allegation, position taken, or filing was undertaken or made in bad faith or in violation of Rule 11 of the Federal Rules of Civil Procedure.

7.4     Nothing in this Stipulation, or any other settlement-related documents or communications, constitutes an admission that any claim which was brought or could have been brought in the Action has or lacks any merit whatsoever, or that Defendants have committed or engaged in any violation of law or wrongdoing whatsoever.

7.5     This Stipulation shall not be deemed to prejudice any of the positions of any of the Parties.

7.6     Neither this Stipulation nor the Settlement, nor any of the terms or provisions of the Stipulation or the Settlement, nor entry of the Judgment, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (i) is or may be deemed to be or may be offered, attempted to be offered or used in any way by the Parties or any other

Person as a presumption, a concession or an admission of, or evidence of, any fault, wrongdoing, liability, or non-liability of the Parties, or of the validity or infirmity of any Released Claims; or (ii) is intended by the Parties to be offered or received as evidence or used by any other person in any other actions or proceedings, whether civil, criminal, or administrative, other than to enforce the terms therein.

7.7    Defendants may file this Stipulation and/or the Judgment in any action that has or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.8    This Settlement may not be terminated, modified, or amended, except by an agreement in writing signed by the Parties or their respective counsel.

7.9    This Stipulation shall be construed as if the Parties collectively prepared it, and any uncertainty or ambiguity shall not be interpreted against any of the Parties.

7.10    This Stipulation shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Connecticut, and shall be governed by, and interpreted in accordance with, the laws of the State of Connecticut, without regard to conflict of laws principles.

7.11    This Stipulation and the exhibits attached hereto contain the entire understanding of the Parties concerning the subject matter hereof and supersede any and all prior agreements, discussions, or negotiations of the Parties, whether oral or in writing.

7.12    Each counsel or other Person executing this Stipulation or its exhibits on behalf of any of the Parties hereby warrants that such Person has the full authority to do so.

7.13    The exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein.

7.14    This Stipulation and the exhibits attached hereto constitute the entire agreement among the Settling Parties with respect to the subject matter hereof and supersede all prior and contemporaneous oral and written agreements and discussions.

7.15    This Stipulation shall be read and interpreted according to its plain meaning and any ambiguity shall not be construed against any of the Parties. It is expressly agreed by the Parties that the judicial rule of construction that a document should be more strictly construed against the draftsperson thereof shall not apply to any provision of this Stipulation. In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit hereto, the terms of this Stipulation shall prevail.

7.16    This Settlement may be executed in any number of counterparts with the same effect as if all Parties had executed the same document. All such counterparts shall be construed together and shall constitute one instrument. A facsimile or electronic (e.g., PDF format) copy of this Settlement as executed shall be deemed an original.

7.17    No representations, warranties, or inducements have been made to any of the Parties concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

7.18    In the event any proceedings by or on behalf of Synchrony, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including an act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Parties agree to use their reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of this Stipulation in a timely and expeditious manner. In

the event of any Bankruptcy Proceedings by or on behalf of Synchrony, the Parties agree that all dates and deadlines set forth herein will be extended for such periods of time as are necessary to obtain necessary orders, consents, releases and approvals from the bankruptcy court to carry out the terms and conditions of the Stipulation.

7.19    Any planned, proposed, or actual sale, merger, or change-in-control of Synchrony shall not void this Stipulation. The Stipulation shall run to the Parties' respective successors-in-interest. In the event of a planned, proposed, or actual sale, merger, or change-in-control of Synchrony, the Parties shall continue to seek court approval of the Settlement expeditiously, including without limitation the Settlement terms reflected in this Stipulation and the Fee and Expense Amount.

7.20    Any dispute, other than regarding allocation of the Fee and Expense Amount amongst Plaintiffs' Counsel, arising out of or relating to the finalization of the Settlement— including, but not limited to, the terms of the Stipulation and related exhibits and filings—shall be finally determined and resolved by the Mediator according to the expedited procedures determined by the Mediator. Each party shall bear their own costs and expenses in connection with any mediation or arbitral proceedings set forth herein.

7.21    The Court shall retain jurisdiction to implement and enforce the terms of the Stipulation and the Judgment and to consider any matters or disputes arising out of or relating to the Settlement, and the Parties and their undersigned counsel submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation and Judgment, and for matters or disputes arising out of or relating to the Settlement.

7.22    After prior notice to the Court, but without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of this Stipulation.

7.23    Unless otherwise required by law, the Parties will not issue any press release or make any other public statement about the Settlement, other than in court filings, which include the Notice and Summary Notice.

7.24    If a statement regarding the Settlement is required by law, the Parties will ensure that any public statements regarding the Settlement will be balanced, fair, accurate, and nondisparaging.

IN WITNESS WHEREOF, the Parties have caused the Stipulation to be executed by their duty authorized attorneys and dated December 12, 2023.

**THE BROWN LAW FIRM, P.C.**

By: _____

Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Email: tbrown@thebrownlawfirm.net

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com

**FAXON LAW GROUP LLC**
Eric Smith
59 Elm Street
New Haven, CT 06510
Telephone: (203) 624-9500
Email: esmith@faxonlawgroup.com

*Counsel for Plaintiffs*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By: _____

Victor L. Hou
Jared Gerber
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Email: vhou@cgsh.com
        jgerber@cgsh.com

**PULLMAN & COMLEY LLC**
James T. (Tim) Shearin
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601
Telephone: (203) 330-2240
Email: jtshearin@pullcom.com

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: SYNCHRONY FINANCIAL DERIVATIVE LITIGATION | Lead Case No. 3:19-cv-00130-VAB<br><br>**EXHIBIT A** |

**<u>CORPORATE GOVERNANCE REFORMS</u>**

## I.   *CORPORATE GOVERNANCE REFORMS TO BE IMPLEMENTED AND MAINTAINED BY SYNCHRONY AS A RESULT OF THE SETTLEMENT*

The Board of Synchrony shall adopt resolutions and amend Board committee charters, corporate governance documents, and/or its Bylaws[1] within ninety (90) days of the Court approved settlement order becoming final to implement as described herein the following Reforms, which shall remain in effect for no less than three and one-half (3.5) years from the date of implementation.

## 1.   THE CHIEF CREDIT OFFICER POSITION

The Company shall ensure that its Chief Credit Officer position is charged with the following responsibilities:

(a)   Performing a comprehensive review of Synchrony's credit card loan portfolio and the state of the Company's credit quality, any material trends and changes on an annual basis and providing a report on his or her findings to the Risk Committee; and

(b)   The Chief Credit Officer shall attend every meeting of the Disclosure Committee, absent extraordinary circumstances, in which case the Chief Credit Officer shall have the option to delegate and designate a direct report to attend such meeting.

## 2.   THE CHIEF RISK OFFICER POSITION

The Company shall ensure that its Chief Risk Officer position is charged with the following responsibilities:

(a)   Ensuring full cooperation of the Risk function to support the Internal Audit function's independent annual assessment of Synchrony's enterprise risk governance framework, and working with Internal Audit to schedule a Joint Risk and Audit Committee update where Internal Audit will present the independent assessment results;

(b)   Ensuring Material Risk Takers' and Material Risk Controllers' goals and objectives reflect the expectations to promote a sound risk culture;

(c)   Performing an independent review of Synchrony's draft quarterly and annual reports filed with the SEC on Forms 10-Q and 10-K, and related materials prior to their publication to check for (1) the accuracy, completeness, and timeliness of disclosures relating to risk exposure from Synchrony's loan portfolio and reserves for loan losses, (2) the identification and disclosure of any material risks to Synchrony's compliance with applicable laws and regulations, and (3) accurate reporting of any material issues that may merit disclosure to Synchrony's Disclosure Committee;

---

[1] The term "Bylaws" refers to the Amended and Restated Bylaws of Synchrony Financial, as Amended on October 27, 2016.

(d)     Reporting periodically to the Risk Committee regarding any material changes or recently discovered deficiencies in the Company's enterprise risk management program;

(e)     In conjunction with the Chief Compliance Officer, overseeing employee training in compliance; and

(f)     The Chief Risk Officer shall attend every meeting of the Disclosure Committee, absent extraordinary circumstances, in which case the Chief Risk Officer shall have the option to delegate and designate a direct report to attend such meeting.

**3.     THE CHIEF COMPLIANCE OFFICER POSITION**

The Company shall ensure that its Chief Compliance Officer position is charged with the following responsibilities:

(a)     Working with Synchrony's Legal function to evaluate Synchrony's ethics and compliance program in light of trends and changes in laws which may affect Synchrony's compliance with applicable laws and regulations;

(b)     Acting as a liaison between management and the Board, or an applicable Board committee, in which capacity the Chief Compliance Officer shall: (i) be responsible for assessing organizational risk for misconduct and noncompliance with applicable laws and regulations; (ii) report material risks relating to such noncompliance to the Risk Committee promptly after identification of these risks; and (iii) make written recommendations for further evaluation and/or remedial action to address material instances of noncompliance within reasonable deadlines, if any, established by the Risk Committee;

(c)     Working with the VP, Ombuds & Ethics Leader to promptly report to the Audit Committee any allegations of non-compliance and ethics concerns relating to material compliance matters; and

(d)     Meeting with the Company's Legal function at least every quarter to discuss ongoing and potential litigation and compliance issues.

**4.     THE MANAGEMENT-LEVEL DISCLOSURE COMMITTEE**

The Disclosure Committee members shall consist of, at least, the Company's CEO, CFO, Chief Risk Officer, Chief Compliance Officer, Chief Audit Executive, Chief Credit Officer, and at least one other senior officer with day-to-day oversight of a key functional area of the Company. The Disclosure Committee charter shall be amended to address the following:

(a)     Establish procedures and review timelines relating to the preparation and filing of the Company's quarterly earnings press releases in addition to its periodic SEC reports, including disclosure policies and lines of communication to ensure that relevant Company personnel timely report to the Disclosure Committee information potentially requiring disclosure, in coordination with other groups within the Company as appropriate;

(b)     Review the Company's Exchange Act filings (including Forms 10-K, Forms 10-Q, Forms 8-K, and proxy statements) and registration statements. In the event that such review reveals a false statement or omission of material fact, the Disclosure Committee will report the deficiency to the Board;

(c)     The chair of the Disclosure Committee, or the chair's designee, shall provide a report at least quarterly to the Audit Committee regarding its processes and findings; and

(d)     At least annually review Company's non-financial operating metrics disclosed in its Exchange Act filings and assess whether to continue reporting such metrics.

**5.      THE BOARD-LEVEL RISK COMMITTEE**

Synchrony shall adopt a resolution to amend the Risk Committee Charter and Risk Committee Key Practices and post the amended Risk Committee Charter and Risk Committee Key Practices on the Company's website. The Risk Committee Charter and Risk Committee Key Practices shall be amended to address the following:

(a)     The purpose of the Risk Committee shall be to assist the Board in its oversight of the Company's enterprise-wide risk management framework, including as it relates to credit and investment, market, liquidity, operational (including cyber security), compliance and strategic risks;

(b)     The Risk Committee shall have unrestricted access to Company personnel and documents and authority to direct and supervise an investigation into any matters within the scope of its duties, including for the purpose of overseeing Synchrony's risk management as it relates to compliance risks. The Risk Committee shall request no less than twice a year that management prepare a report to the Board reflecting material risks that have been identified including recommendations regarding proposals for mitigating these risks, as well as relevant considerations relating to Synchrony's public disclosures of these risks;

(c)     The Risk Committee shall have access to certifications or such other reports, as it deems necessary, from the Chief Credit Officer, Chief Risk Officer, the Chief Compliance Officer, and as appropriate other members of management or other personnel, at least quarterly, confirming the accuracy of any proposed risk disclosures or providing information necessary to confirm the same; and

(d)     The Risk Committee shall ensure that its Charter and Key Practices are amended to describe its oversight functions and responsibilities with regard to the Enterprise Risk Management Committee, the Asset and Liability Management Committee and the Capital Management Committee.

**6.      THE AUDIT COMMITTEE**

Synchrony shall adopt a resolution to amend the Audit Committee Charter and Audit Committee Key Practices and post the amended Audit Committee Charter and Audit Committee Key Practices on the Company's website. The Audit Committee Charter and Audit Committee Key Practices shall be amended to address the following:

(a)    During the Audit Committee's separate executive sessions with the Company's Chief Audit Executive and independent auditor, the Audit Committee shall also meet with, as the Audit Committee deems appropriate, the Chief Credit Officer, Chief Risk Officer, Chief Compliance Officer, Chief Legal Officer, Secretary and a representative of the Disclosure Committee in carrying out its duties;

(b)    In reviewing the Company's draft quarterly and annual reports filed with the SEC on Forms 10-Q and 10-K and its quarterly earnings releases, the Audit Committee shall solicit the input of management, as necessary, to review the accuracy of public disclosures related to topics within their expertise, including, without limitation: (i) Synchrony's loan portfolio and reserves for loan losses, internal controls, enterprise risks, and compliance matters that may have a material impact on the Company's business, results of operations or financial condition; or (ii) any other matter required to be disclosed under state and federal securities laws and regulations; and

(c)    The Audit Committee shall be responsible for overseeing the establishment and maintenance of a new third-party reporting hotline, website, and email address. The Audit Committee may delegate matters with respect to the operation and process for establishment of the hotline to a management committee.

## 7.    BOARD OVERSIGHT OF STOCK REPURCHASES

The Company shall modify its procedure for approving and overseeing stock repurchases, which shall include the following measures:

(a)    Before authorizing any program to repurchase the Company stock, the Board shall evaluate management's recommendation and determine independently whether such a repurchase program is in the best interests of the Company; and

(b)    The Board's evaluation must support a finding that: (i) the proposed repurchases would serve the best interests of the Company and its stockholders; and (ii) the proposed repurchases appropriately manage the Company's liquidity, capital and stockholder equity.

## 8.    INSIDER TRADING CONTROLS

The Company shall post the Insider Trading Policy on the Company's website.

(a)    The adoption of a 10b5-1 Trading Plan by an executive officer or director, and the aggregate number of shares involved, shall be publicly disclosed, as and if so required by SEC rules and regulations; and

(b)    All 10b5-1 Trading Plans shall be pre-cleared by the Company's Legal function.

## 9.    THE COMPENSATION COMMITTEE

Synchrony shall adopt a resolution to amend the Management Development and Compensation Committee Charter ("Compensation Committee Charter") and Management Development and Compensation Committee Key Practices ("Compensation Committee Key

Practices") and post the amended Compensation Committee Charter and Compensation Committee Key Practices on the Company's website. The Compensation Committee Charter and Compensation Committee Key Practices shall be amended to address the following:

(a)     In determining, setting, or approving annual short-term compensation arrangements, the Compensation Committee shall take into account the particular executive officer's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures. This shall not affect payments or benefits that are required to be paid pursuant to the Company's plans, policies, or agreements; and

(b)     In determining, setting, or approving termination benefits and/or separation pay to executive officers, the Compensation Committee shall take into consideration the circumstances surrounding the particular executive officer's departure and the executive officer's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures. This shall not affect payments or benefits that are required to be paid pursuant to the Company's plans, policies, or agreements.

## 10.     EMPLOYEE TRAINING IN COMPLIANCE

Synchrony shall ensure that its employee training program adheres to the following conditions:

(a)     Synchrony's Chief Risk Officer shall be responsible for education pursuant to this provision;

(b)     Training shall be mandatory for all directors, officers, employees, of Synchrony. Training shall be annual for all such persons, and in the event a person is appointed or hired after the annual training for a particular year, a special training session shall be held for such individual within three (3) months of his or her appointment or hiring; and

(c)     Training shall include coverage of Synchrony's Code of Conduct and the Insider Trading Policy for relevant directors, officers and employees.

## 11.     UPDATE OF OMBUDS PROGRAM POLICY

In conjunction with Synchrony's Ombuds program, the Board shall require management to update the Synchrony Ombuds Program Policy (the "Ombuds Policy") to address the following. The Company shall complete implementation of the Ombuds Policy within fifteen (15) months of the Court approved settlement order becoming final.

(a)     The Company's Ombuds Policy shall:

1.      Encourage interested parties to bring forward ethical and legal violations, and/or a reasonable belief that ethical and legal violations have occurred, to the VP, Ombuds & Ethics Leader, the Chief Compliance Officer, Human Resources, Legal and/or the third-party reporting hotline, website, or email address, in addition to those reporting resources already identified in the Code of Conduct, so that action may be taken to resolve the potential concern. These concerns shall be reviewed by the VP, Ombuds & Ethics Leader and/or Legal as applicable

and may also be directed to the Ombuds Sub-Committee and Audit Committee, in consultation with and under the supervision of the Company's Legal function;

      2.    Communicate to all employees regarding the importance of concern reporting;

      3.    Require all Company employees to cooperate with the Board, Audit Committee or company authorized investigations. Failure to cooperate, making false statements to or otherwise misleading internal or external auditors, investigators, legal or compliance representatives, regulators or other governmental entities may be grounds for immediate termination of employment or other relationship with the Company and may also be a criminal act that can result in severe penalties; and

      4.    Require a third-party provider to promptly report in writing any credible concern to the Ombuds Program. The Ombuds Sub-Committee shall ensure that the third-party reporting hotline, website, and email address are published conspicuously on the Company's website, are published in the Code of Conduct, and are made available elsewhere so as to be available not only to employees, but also to customers, vendors, and other third parties. The third-party reporting resources shall provide an anonymous communication channel for employees and other stakeholders to report their concerns regarding, among other things, compliance matters, the integrity of Synchrony's public disclosures, internal controls, auditing, financial reporting, accounting matters, insider sales and other matters. Employees may also use this communication channel to report concerns relating to ethical business or personal conduct, integrity, and professionalism. The VP, Ombuds & Ethics Leader shall ensure that all anonymous Ombuds concerns are provided to the Company's Legal function and that all concerns will be confidentially and promptly reviewed and investigated, where appropriate, with oversight by the Company's Legal function, and that any appropriate remedial action is taken based on the results of the investigation. The Company's Legal function shall ensure that the Company's nonretaliation policy is strictly complied with in order to protect any Synchrony employee who reports a concern via the third-party reporting resources.

    (b)    The Code of Conduct—with the endorsement of the Board and the most senior management of the Company—must adequately notify employees and independent contractors of Synchrony of the following:

      1.    Ombuds concerns should be directed to the VP, Ombuds & Ethics Leader, or any reporting resources already identified in the Code of Conduct, and the concerns will be handled by these parties anonymously, if requested, and in confidence;

      2.    If a concern is brought to an outside regulator or other governmental entity, he or she will be protected by the terms of the Ombuds Policy just as if he or she directed the concern to the Company reporting resources identified in the Code of Conduct; and

      3.    It is both illegal and against Synchrony's policy to retaliate in any manner against anyone for raising a concern in good faith, participating in any investigation and/or for encouraging/assisting others in raising a concern;

6

(c)     The Company shall conspicuously post information regarding the third-party reporting hotline, website, or email address on the Company website and make clear that it provides an anonymous communication channel and is available to assist on matters pertaining to any unlawful activities, compliance matters, the integrity of Synchrony's public disclosures, internal controls, auditing, financial reporting, accounting matters, insider sales, and other related matters. Employees may also use this communication channel to report concerns relating to ethical business or personal conduct, integrity, and professionalism; and

(d)     The Company shall remind employees of concern reporting options and protections in employee communications provided at least annually and via the Company's intranet.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: SYNCHRONY FINANCIAL DERIVATIVE LITIGATION | Lead Case No. 3:19-cv-00130-VAB<br><br>**EXHIBIT B** |

<u>**[PROPOSED] PRELIMINARY APPROVAL ORDER**</u>

This matter came before the Court for a hearing on _____, 2023. Jeffrey Gilbert and Maureen Aldridge (the "Plaintiffs") in the above-captioned action (the "Action") pending in the United States District Court for the District of Connecticut (the "Court") have made an unopposed motion, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, for an order: (i) preliminarily approving the proposed settlement (the "Settlement") of stockholder derivative claims brought on behalf of Synchrony Financial ("Synchrony" or the "Company"), in accordance with the Stipulation and Agreement of Settlement dated December 12, 2023 (the "Stipulation"); (ii) approving the form and manner of the notice of the Settlement to Current Synchrony Stockholders; and (iii) setting a date for the Settlement Hearing.[1]

WHEREAS, the Stipulation sets forth the terms and conditions for the Settlement, including, but not limited to, a proposed Settlement and dismissal with prejudice of the above-captioned derivative action, titled *In re: Synchrony Financial Derivative Litigation*, Lead Case No. 3:19-cv-00130-VAB;

WHEREAS, the Court having: (i) read and considered Plaintiffs' Unopposed Motion for Preliminary Approval of Stockholder Derivative Settlement together with the accompanying Memorandum of Points and Authorities; (ii) read and considered the Stipulation, as well as all the exhibits attached thereto; and (iii) heard and considered arguments by counsel for the Parties in favor of preliminary approval of the Settlement;

WHEREAS, the Court finds, upon a preliminary evaluation, that the proposed Settlement falls within the range of possible approval criteria, as it provides a beneficial result for Synchrony

---

[1] Except as otherwise expressly provided below or as the context otherwise requires, all capitalized terms contained herein shall have the same meanings and/or definitions as set forth in the Stipulation.

1

and appears to be the product of serious, informed, non-collusive negotiations overseen by an experienced mediator; and

WHEREAS, the Court also finds, upon a preliminary evaluation, that Synchrony stockholders should be apprised of the Settlement through the proposed form and means of notice, allowed to file objections, if any, thereto, and appear at the Settlement Hearing.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.      This Court, for purposes of this Preliminary Approval Order, adopts the definitions set forth in the Stipulation.

2.      This Court preliminarily approves, subject to further consideration at the Settlement Hearing described below, the Settlement as set forth in the Stipulation as being fair, reasonable, and adequate.

3.      A hearing shall be held on _____, 2024 at ____ _.m. [a date no sooner than one hundred (100) days after the entry of the Preliminary Approval Order], before the Honorable Victor A. Bolden, at the United States District Court for the District of Connecticut, Courtroom 2 of the Brien McMahon Federal Building, United States Courthouse, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604 (the "Settlement Hearing"), at which the Court will determine: (i) whether the terms of the Stipulation should be approved as fair, reasonable, and adequate; (ii) whether the Notice and Summary Notice fully satisfied the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and the requirements of due process; (iii) whether all Released Claims against the Released Persons should be fully and finally released; (iv) whether the agreed-to Fee and Expense Amount should be approved; and (v) such other matters as the Court may deem appropriate.

4.     The Court finds that the form, substance, and dissemination of information regarding the proposed Settlement in the manner set out in this Preliminary Approval Order constitutes the best notice practicable under the circumstances and complies fully with Rule 23.1 of the Federal Rules of Civil Procedure and due process.

5.     Within twenty-one (21) days after the entry of this Preliminary Approval Order, Synchrony shall: (1) post a copy of the Notice and the Stipulation (and exhibits thereto) on the Investor Relations page of the Company's website; (2) publish the Summary Notice in *Investor's Business Daily*; and (3) publish the Summary Notice in *USA Today*. At least thirty (30) days before the Settlement Hearing, Synchrony shall also update the litigation disclosure in its first filing with the SEC on Form 10-Q or Form 10-K after the entry of this Preliminary Approval Order to advise of the status of the Settlement and that the Notice and Stipulation (and exhibits thereto) can be found on the Investor Relations page of Synchrony's website.

6.     All costs incurred in the filing, posting, and publication of the notice of the Settlement shall be paid by Synchrony, and Synchrony shall undertake all administrative responsibility for the filing, posting, and publication of the notice of the Settlement.

7.     At least thirty (30) calendar days prior to the Settlement Hearing, Defendants' Counsel shall file with the Court an appropriate affidavit or declaration with respect to filing, publishing, and posting the notice of the Settlement as provided for in paragraph 5 of this Preliminary Approval Order.

8.     All Current Synchrony Stockholders shall be subject to and bound by the provisions of the Stipulation and the releases contained therein, and by all orders, determinations, and judgments in the Action concerning the Settlement, whether favorable or unfavorable to Current Synchrony Stockholders.

9.     Pending final determination of whether the Settlement should be approved, Plaintiffs and Synchrony stockholders shall not commence, institute, or prosecute against any of the Released Persons any action or proceeding in any court or tribunal asserting any of the Released Claims.

10.     Any stockholder of Synchrony common stock may appear and show cause, if he, she, or it has any reason why the Settlement embodied in the Stipulation should not be approved as fair, reasonable, and adequate, or why a judgment should or should not be entered hereon, or the Fee and Expense Amount or Service Awards should not be awarded. However, no Synchrony stockholder shall be heard or entitled to contest the approval of the Settlement, or, if approved, the Judgment to be entered thereon, unless that Synchrony stockholder has caused to be filed, and served on counsel as noted below: (i) a written notice of objection with the case name and number (*In re: Synchrony Financial Derivative Litigation*, Lead Case No. 3:19-cv-00130-VAB (D. Conn.)); (ii) the Person's name, legal address, and telephone number; (iii) notice of whether such Person intends to appear at the Settlement Hearing and the reasons such Person desires to appear and be heard, and whether such Person is represented by counsel and if so, contact information for counsel; (iv) competent evidence that such Person held shares of Synchrony common stock as of the date of the Stipulation and continues to hold such stock as of the date the objection is made, including the date(s) such shares were acquired; (v) a statement of objections to any matters before the Court, the grounds therefor, as well as all documents or writings such Person desires the Court to consider; and (vi) the identities of any witnesses such Person plans on calling at the Settlement Hearing, along with a summary description of their expected testimony.

11.     At least twenty-one (21) calendar days prior to the Settlement Hearing set for _____, 2024, any such person must file the written objection(s) and corresponding

4

materials with the Clerk of the Court, United States District Court for the District of Connecticut,

Courtroom 2 of the Brien McMahon Federal Building, United States Courthouse, 915 Lafayette

Boulevard, Bridgeport, CT 06604, and serve such materials by that date, on each of the following

Parties' counsel:

| *Counsel for Plaintiffs:* | *Counsel for Defendants:* |
|---|---|
| **THE BROWN LAW FIRM, P.C.** | **CLEARY GOTTLIEB STEEN &** |
| Timothy Brown | **HAMILTON LLP** |
| 767 Third Avenue, Suite 2501 | Jared Gerber |
| New York, NY 10017 | One Liberty Plaza |
| Telephone: 516-922-5427 | New York, NY 10006 |
| Email: tbrown@thebrownlawfirm.net | Telephone: 212-225-2507 |
| | Email: jgerber@cgsh.com |

12.     Only stockholders who have filed with the Court and sent to the Parties' counsel

valid and timely written notices of objection and notices of appearance will be entitled to be heard

at the hearing unless the Court orders otherwise.

13.     Any Person or entity who fails to appear or object in the manner provided herein

shall be deemed to have waived such objection and shall forever be foreclosed from making any

objection to the fairness, reasonableness, or adequacy of the Settlement and to the Fee and Expense

Amount and Service Awards to the two Plaintiffs, unless otherwise ordered by the Court, but shall

be forever bound by the Judgment to be entered and the releases to be given as set forth in the

Stipulation.

14.     The Plaintiffs shall file their motion for final approval of the Settlement at least

twenty-eight (28) calendar days prior to the Settlement Hearing. If there is any objection to the

Settlement, the deadline for filings in response to the objection(s) is seven (7) calendar days prior

to the Settlement Hearing.

15.     All proceedings in the Action are stayed until further order of the Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation.

16.     This Court may, for good cause, extend any of the deadlines set forth in this Preliminary Approval Order without further notice to Synchrony stockholders.

17.     Neither the Stipulation, nor any of its terms or provisions, nor entry of the Judgment, nor any document or exhibit referred or attached to the Stipulation, nor any action taken to carry out the Stipulation, is, may be construed as, or may be used as evidence of the validity of any of the claims released herein or an admission by or against the Defendants of any fault, wrongdoing, or concession of liability whatsoever.

18.     The Court may, in its discretion, change the date and/or time of the Settlement Hearing without further notice to Current Synchrony Stockholders. Any Current Synchrony Stockholder (or his, her or its counsel) who wishes to appear at the Settlement Hearing should consult the Court's calendar for any change in the date or time of the Settlement Hearing.

**IT IS SO ORDERED.**


DATED:                        _____

                              HONORABLE VICTOR A. BOLDEN
                              UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: SYNCHRONY FINANCIAL DERIVATIVE LITIGATION | Lead Case No. 3:19-cv-00130-VAB |
| | **EXHIBIT C** |

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT**
**OF STOCKHOLDER DERIVATIVE ACTION**

TO:    **ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF SYNCHRONY FINANCIAL ("SYNCHRONY" OR THE "COMPANY") COMMON STOCK AS OF DECEMBER 12, 2023.**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL WITH PREJUDICE OF STOCKHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS.

IF THE COURT APPROVES THE SETTLEMENT OF THE DERIVATIVE ACTION, CURRENT SYNCHRONY STOCKHOLDERS WILL BE FOREVER BARRED FROM CONTESTING THE APPROVAL OF THE PROPOSED SETTLEMENT AND DISMISSAL WITH PREJUDICE, AND FROM PURSUING RELEASED CLAIMS.

THIS ACTION IS NOT A "CLASS ACTION." THUS, THERE IS NO COMMON FUND UPON WHICH YOU CAN MAKE A CLAIM FOR A MONETARY PAYMENT.

PLEASE TAKE NOTICE that this action is being settled on the terms set forth in a Stipulation and Agreement of Settlement dated December 12, 2023 (the "Stipulation"). The purpose of this Notice is to inform you of:

• the existence of the above-captioned consolidated derivative action pending in the United States District Court for the District of Connecticut (the "Court") captioned *In re: Synchrony Financial Derivative Litigation*, Lead Case No. 3:19-cv-00130-VAB (the "Action"),

• the proposed settlement between Plaintiffs and Defendants (together, "Parties") reached in the Action (the "Settlement"),

• the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement and dismissal of the Action with prejudice,

• Plaintiffs' Counsel's application to the Court for a Fee and Expense Amount, and

• Plaintiffs' Counsel's application to the Court for case Service Awards to the two Plaintiffs.

This Notice describes what steps you may take in relation to the Settlement. This Notice is not an expression of any opinion by the Court about the truth or merits of Plaintiffs' claims or Defendants' defenses. This Notice is solely to advise you of the proposed Settlement of the Action and of your rights in connection with the proposed Settlement.

<u>Summary</u>

On December 12, 2023, Synchrony, in its capacity as a nominal defendant, entered into the Stipulation to resolve the Action, which Stipulation was filed in the Court. The Action was prosecuted derivatively on behalf of Synchrony against certain current and former directors and

officers of the Company and against the Company as a nominal defendant. The Stipulation and the settlement contemplated therein (the "Settlement"), subject to the approval of the Court, are intended by the Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Released Claims and to result in the complete dismissal of the Action with prejudice, upon the terms and subject to the conditions set forth in the Stipulation. The proposed Settlement requires the Company to adopt and maintain certain corporate governance reforms and procedures, as outlined in Exhibit A to the Stipulation (the "Reforms").

In recognition of the substantial benefits conferred upon Synchrony as a direct result of the Reforms achieved through the prosecution and Settlement of the Action, and subject to Court approval, the Parties agreed on August 9, 2023 that Synchrony's insurer shall pay to Plaintiffs' Counsel attorneys' fees and expenses in the amount of eight hundred and eighty-five thousand dollars ($885,000.00) (the "Fee and Expense Amount"), subject to Court approval. Plaintiffs' Counsel shall also apply to the Court for service awards to be paid to the two Plaintiffs in an amount of up to two thousand dollars ($2,000.00) each (the "Service Awards"), to be paid out of the Fee and Expense Amount.

This notice is a summary only and does not describe all of the details of the Stipulation. For full details of the matters discussed in this summary, please see the full Stipulation and its exhibits posted on the investor relations page of the Company's website, https://investors.synchrony.com, contact Plaintiffs' Counsel as set forth below, or inspect the full Stipulation filed with the Clerk of the Court.

<u>What is the Lawsuit About?</u>

The Action is brought derivatively on behalf of nominal defendant Synchrony and alleges that, *inter alia*, beginning January 19, 2018, at least, the Individual Defendants breached their fiduciary duties by issuing and/or causing the Company to issue false and misleading statements and omissions to the public regarding the pushback Synchrony was receiving from its retail partners based on: (1) adjustments the Company had made to its underwriting practices; and (2) Synchrony's process of making less credit available to certain Company borrowers. Plaintiffs also allege that the Individual Defendants caused Synchrony to repurchase its own stock at artificially inflated prices while certain of them engaged in insider sales of Company stock. The Action alleges that, as a result of the foregoing, the Company experienced reputational and financial harm. Defendants have denied and continue to deny each and all of the claims and allegations of wrongdoing asserted in the Action.

<u>Why is there a Settlement of the Action?</u>

The Court has not decided in favor of Defendants or Plaintiffs. Instead, the Parties agreed to the Settlement to avoid the distraction, costs, and risks of further litigation, and because the Parties agree, and the Company determined, that the Reforms that the Company will adopt, implement, and maintain as part of the Settlement provide substantial benefits to Synchrony and its stockholders.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Plaintiffs in the Action. Defendants have expressly denied and continue to deny all

charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Nonetheless, Defendants have concluded that it is desirable for the Action to be fully and finally settled in the matter and upon the terms and conditions set forth in this Stipulation.

<u>The Settlement Hearing, and Your Right to Object to the Settlement</u>

On December __, 2023, the Court entered an order preliminarily approving the Stipulation and the Settlement contemplated therein (the "Preliminary Approval Order") and providing for notice of the Settlement to be provided to current Synchrony stockholders ("Current Synchrony Stockholders"). The Preliminary Approval Order further provides that the Court will hold a hearing (the "Settlement Hearing") on _____ __, 2024 at __:__ __.m. before the Honorable Victor A. Bolden at the United States District Court for the District of Connecticut, Courtroom 2 of the Brien McMahon Federal Building, United States Courthouse, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604 to, among other things: (i) determine whether the proposed Settlement is fair, reasonable and adequate and in the best interests of the Company and its stockholders; (ii) consider any objections to the Settlement submitted in accordance with this Notice; (iii) determine whether a judgment should be entered dismissing all claims in the Action with prejudice, and releasing the Released Claims against the Released Persons; (iv) determine whether the Court should approve the agreed-to Fee and Expense Amount; (v) determine whether the Court should approve the two Service Awards, which shall be funded from the Fee and Expense Amount to the extent approved by the Court; and (vi) consider any other matters that may properly be brought before the Court in connection with the Settlement. Upon final approval of the Settlement, the Plaintiffs will voluntarily dismiss their complaints with prejudice.

The Court may, in its discretion, change the date and/or time of the Settlement Hearing without further notice to you. If you intend to attend the Settlement Hearing, please consult the Court's calendar, for any change in the date or time of the Settlement Hearing.

Any Current Synchrony Stockholder who wishes to object to the fairness, reasonableness, or adequacy of the Settlement as set forth in the Stipulation, or to the Fee and Expense Amount or Service Awards, may file with the Court a written objection. An objector must, at least twenty-one (21) calendar days prior to the Settlement Hearing: (1) file with the Clerk of the Court and serve (either by hand delivery or by first class mail) upon the below listed counsel a written objection to the Settlement setting forth (i) a written notice of objection with the case name and number (*In re: Synchrony Financial Derivative Litigation*, Lead Case No. 3:19-cv-00130-VAB (D. Conn.)); (ii) the Person's name, legal address, and telephone number; (iii) notice of whether such Person intends to appear at the Settlement Hearing and the reasons such Person desires to appear and be heard, and whether such Person is represented by counsel and if so, contact information for counsel; (iv) competent evidence that such Person held shares of Synchrony common stock as of the date of the Stipulation and continues to hold such stock as of the date the objection is made, including the date(s) such shares were acquired; (v) a statement of objections to any matters before the Court, the grounds therefor, as well as all documents or writings such Person desires the Court to consider; and (vi) the identities of any witnesses such Person plans on calling at the Settlement Hearing, along with a summary description of their expected testimony. Any objector who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall be

foreclosed from raising any objection to the Settlement and from objecting at the Settlement Hearing, except for good cause shown.

*IF YOU MAKE A WRITTEN OBJECTION, IT MUST BE RECEIVED BY THE CLERK OF THE COURT NO LATER THAN _____ __, 2024.*  The Clerk's address is:

Clerk of the Court,
United States District Court for the District of Connecticut,
Courtroom 2,  Brien McMahon Federal Building, U.S. Courthouse
915 Lafayette Boulevard
Bridgeport, CT 06604

*YOU ALSO MUST DELIVER COPIES OF THE MATERIALS TO PLAINTIFFS' COUNSEL AND DEFENDANTS' COUNSEL SO THEY ARE RECEIVED NO LATER THAN _____ __, 2024.*  Counsel's addresses are:

**Counsel for Plaintiffs:**
THE BROWN LAW FIRM, P.C.
Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427

**Counsel for Defendants:**
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jared Gerber
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2507

An objector may file an objection on his, her, or its own or through an attorney hired at his, her, or its own expense.  If an objector hires an attorney to represent him, her, or it for the purposes of making such objection, the attorney must serve (either by hand delivery or by first class mail) a notice of appearance on the counsel listed above and file such notice with the Court no later than twenty-one (21) calendar days before the Settlement Hearing. Any Synchrony stockholder who does not timely file and serve a written objection complying with the above terms shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

Any objector who files and serves a timely, written objection in accordance with the instructions above, may appear at the Settlement Hearing either in person or through counsel retained at the objector's expense. Objectors need not attend the Settlement Hearing, however, in order to have their objections considered by the Court.

If you are a Current Synchrony Stockholder and do not take steps to appear in this action and object to the proposed Settlement, you will be bound by the Judgment of the Court and will

4

forever be barred from raising an objection to the settlement in the Action, and from pursuing any of the Released Claims.

**CURRENT SYNCHRONY STOCKHOLDERS AS OF DECEMBER 12, 2023 WHO HAVE NO OBJECTION TO THE SETTLEMENT DO NOT NEED TO APPEAR AT THE SETTLEMENT HEARING OR TAKE ANY OTHER ACTION.**

Interim Stay and Injunction

Pending the Court's determination as to final approval of the Settlement, Plaintiffs and Plaintiffs' Counsel, and any Current Synchrony Stockholders, derivatively on behalf of Synchrony, are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims derivatively against any of the Released Persons in any court or tribunal.

Scope of the Notice

This Notice is a summary description of the Action, the complaints, the terms of the Settlement, and the Settlement Hearing. For a more detailed statement of the matters involved in the Action, reference is made to them in the Stipulation and its exhibits, copies of which may be reviewed and downloaded at the investor relations page of the Company's website, https://investors.synchrony.com.

\*        \*        \*

You may obtain further information by contacting Plaintiffs' Counsel at: Timothy Brown, The Brown Law Firm, P.C., 767 Third Avenue, Suite 2501, New York, NY 10017, Telephone: (516) 922-5427, E-mail: tbrown@thebrownlawfirm.net. **Please Do Not Call the Court or Defendants with Questions About the Settlement.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: SYNCHRONY FINANCIAL DERIVATIVE LITIGATION | Lead Case No. 3:19-cv-00130-VAB |
| | **EXHIBIT D** |

**SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF**
**<u>STOCKHOLDER DERIVATIVE ACTION</u>**

TO: **ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF SYNCHRONY FINANCIAL ("SYNCHRONY" OR THE "COMPANY") COMMON STOCK AS OF DECEMBER 12, 2023.**

**PLEASE READ THIS SUMMARY NOTICE CAREFULLY AND IN ITS ENTIRETY AS YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THE LITIGATION.**

**YOU ARE HEREBY NOTIFIED** that the above-captioned stockholder derivative action (the "Action"), is being settled on the terms set forth in a Stipulation and Agreement of Settlement dated December 12, 2023 (the "Stipulation").

The Action alleges claims against each of the Individual Defendants[1] for breach of fiduciary duty, and/or other violations of law, including the federal securities laws and unjust enrichment, in connection with their making and/or causing the Company to make false and misleading statements and omissions to the public regarding the pushback Synchrony was receiving from its retail partners based on: (1) adjustments the Company had made to its underwriting practices; and (2) Synchrony's process of making less credit available to certain Company borrowers. Plaintiffs also allege that the Individual Defendants caused Synchrony to repurchase its own stock at artificially inflated prices while certain of them engaged in insider sales of Company stock. The Action alleges that, as a result of the foregoing, the Company experienced reputational and financial harm. Defendants have denied and continue to deny each and all of the claims and allegations of wrongdoing asserted in the Action.

Pursuant to the terms of the Settlement, Synchrony agrees to implement and maintain certain corporate governance reforms that are outlined in Exhibit A to the Stipulation (the "Reforms"). The Reforms shall be maintained for three and a half (3.5) years. Synchrony acknowledges and agrees that the filing, pendency, and settlement of the Action was a material and precipitating cause of the Company's decision to adopt, implement, and maintain the Reforms. Synchrony also acknowledges and agrees that the Reforms confer substantial benefits to Synchrony and Synchrony's shareholders.

After negotiating the principal terms of the Settlement, counsel for the Parties, with the assistance of the Mediator, negotiated the attorneys' fees and expenses to be paid to Plaintiffs' Counsel, subject to Court approval (the "Fee and Expense Amount"). In light of the substantial benefits conferred upon the Company and its stockholders, Synchrony's insurers shall pay to Plaintiffs' Counsel eight hundred and eighty-five thousand dollars ($885,000.00) for their attorneys' fees and expenses, subject to Court approval. Defendants also agreed not to object to the request for the Court to approve Service Awards of up to two thousand dollars ($2,000.00) for each of the two Plaintiffs, to be paid from the Fee and Expense Amount.

On _____ __, 2024 at __:__ .m., a hearing (the "Settlement Hearing") will be held before the Honorable Victor A. Bolden at the United States District Court for the District of

---

[1] All capitalized terms that are not otherwise defined shall have the definitions as set forth in the Stipulation.

Connecticut, Courtroom 2 of the Brien McMahon Federal Building, United States Courthouse, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604, for the purpose of determining whether the Settlement should be approved as fair, reasonable, and adequate and whether the Court should approve the agreed-to Fee and Expense Amount and the Service Awards for Plaintiffs. ***Because this is not a class action, except as otherwise provided for in the Stipulation with respect to the Plaintiffs, no Current Synchrony Stockholder has the right to receive any individual compensation as a result of the Settlement.***

This Summary Notice provides a condensed overview of certain provisions of the Stipulation and the full Notice of Pendency and Proposed Settlement of Stockholder Derivative Action (the "Notice"). It is not a complete statement of the events of the Action or the terms set forth in the Stipulation. This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation. For additional information about the claims asserted in the Action, and the terms of the proposed Settlement, you may inspect the Stipulation and its exhibits and other papers at the Clerk's office in the Court at any time during regular business hours. In addition, copies of the Stipulation and its exhibits and the Notice are available on the Investor Relations page of the Company's website, https://investors.synchrony.com.

The Court may, in its discretion, change the date and/or time of the Settlement Hearing without further notice to you. If you intend to attend the Settlement Hearing, please consult the Court's calendar for any change in the date or time of the Settlement Hearing.

Inquiries about the Action or the Settlement may be made to: Timothy Brown, The Brown Law Firm, P.C., 767 Third Avenue, Suite 2501, New York, NY 10017, Telephone: (516) 922-5427, Email: tbrown@thebrownlawfirm.net.

You may enter an appearance before the Court, at your own expense, individually or through counsel of your choice. If you want to object at the Settlement Hearing, you must be a Current Synchrony Stockholder and you must first comply with the procedures for objecting that are set forth in the Notice. **Any objection to any aspect of the Settlement must be filed with the Clerk of the Court and sent to Plaintiffs' Counsel and Defendants' Counsel no later than _____ __, 2024 (21 days before the Settlement Hearing)**, in accordance with the procedures set forth in the Stipulation and the Notice. Any Current Synchrony Stockholder who fails to object in accordance with such procedures will be bound by the Order and Final Judgment of the Court granting final approval to the Settlement and the releases of claims therein, and shall be deemed to have waived the right to object (including the right to appeal) and forever shall be barred, in this proceeding or in any other proceeding, from raising such objection.

## PLEASE DO NOT CALL THE COURT OR DEFENDANTS WITH QUESTIONS ABOUT THE SETTLEMENT.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: SYNCHRONY FINANCIAL DERIVATIVE LITIGATION | Lead Case No. 3:19-cv-00130-VAB |
| | **EXHIBIT E** |

**[PROPOSED] ORDER AND FINAL JUDGMENT**

This matter came before the Court for hearing on _____, 2024, to consider approval of the proposed settlement ("Settlement") set forth in the Stipulation and Agreement of Settlement dated December 12, 2023 (the "Stipulation"). The Court has reviewed and considered all documents, evidence, objections (if any), and arguments presented in support of or against the Settlement. Good cause appearing therefore, the Court enters this Order and Final Judgment (the "Judgment").

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement, and over all Parties.

3.      The Court finds that the notice of the Settlement was published and disseminated in accordance with this Court's Preliminary Approval Order. This Court further finds that the forms and contents of the Notice and Summary Notice, as previously preliminarily approved by the Court, fully satisfied the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and the requirements of due process.

4.      The Court hereby approves the Settlement set forth in the Stipulation and finds that the Settlement is, in all respects, fair, reasonable, and adequate to each of the Parties, and further finds that the Settlement is in the best interests of Synchrony and its stockholders.

5.      The Action and all claims contained therein, as well as all of the Released Claims against Released Persons, are dismissed with prejudice. The Parties are to bear their own costs, except as otherwise provided below.

6.      Upon the Effective Date, the Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims against the Released Persons. Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Persons with respect to any Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting the Released Claims against the Released Persons except to enforce the releases and other terms and conditions contained in the Settlement and/or this Judgment.

7.      Upon the Effective Date, Defendants and Defendants' Counsel shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Defendants' Released Persons from Defendants' Released Claims. Defendants and Defendants' Counsel shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue Defendants' Released Persons with respect to any of Defendants' Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting Defendants' Released Claims against Defendants' Released Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or this Judgment.

8.      During the course of the litigation, all parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure, and all other similar laws or statutes.

9.      The Court hereby approves the sum of eight hundred and eighty-five thousand dollars ($885,000.00) for the payment of Plaintiffs' Counsel's attorneys' fees and expenses in the Action (the "Fee and Expense Amount") and finds that the Fee and Expense Amount is fair and reasonable. No other fees, costs, or expenses may be awarded to Plaintiffs' Counsel in connection

with the Settlement. The Fee and Expense Amount shall be distributed in accordance with the terms of the Stipulation.

10.     The Court hereby approves the service awards of two thousand dollars ($2,000.00) for each of the two Plaintiffs to be paid from Plaintiffs' Counsel's Fee and Expense Amount in recognition of Plaintiffs' participation and effort in the prosecution of the Action.

11.     Neither the Stipulation, nor any of its terms or provisions, nor entry of this Judgment, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, may be construed as, or may be used as evidence of the validity of any of the claims released herein or an admission by or against the Defendants of any fault, wrongdoing, or concession of liability whatsoever.

12.     Defendants may file the Stipulation and/or the Judgment in any action that has or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction with respect to implementation and enforcement of the terms of the Stipulation.

14.     Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, this Court hereby finally approves the Stipulation and Settlement in all respects and orders the Parties to perform its terms to the extent the Parties have not already done so.

15.     This Judgment is a final judgment, and the Court finds that no just reason exists for delay in entering the Judgment in accordance with the Stipulation. Accordingly, the Clerk is hereby

directed to enter this Judgment forthwith in accordance with Rule 58 of the Federal Rules of Civil

Procedure.

      **IT IS SO ORDERED.**


DATED:                           _____

                                     HONORABLE VICTOR A. BOLDEN
                                     UNITED STATES DISTRICT JUDGE