**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE SYNCHRONY FINANCIAL DERIVATIVE LITIGATION | No. 3:19-cv-00130-VAB |

**RULING AND ORDER APPROVING**
**SHAREHOLDER DERIVATIVE SETTLEMENT**

This consolidated shareholder derivative litigation pending in this Court is entitled *In re: Synchrony Financial Derivative Litigation*, No. 3:19-cv-00130 (the "Action").

Jeffrey Gilbert, derivatively on behalf of Synchrony Financial ("Synchrony" or the "Company"), and Maureen Aldridge, derivatively on behalf of Synchrony (collectively, the "Plaintiffs"), filed verified shareholder derivative complaints related to the case, *In re Synchrony Financial Securities Litigation* (the "Securities Class Action"), against Margaret M. Keane ("Keane"), Brian D. Doubles ("Doubles"), Paget L. Alves ("Alves"), Arthur W. Coviello, Jr. ("Coviello"), William W. Graylin ("Graylin"), Roy A. Guthrie ("Guthrie"), Richard C. Hartnack ("Hartnack"), Jeffrey G. Naylor ("Naylor"), Laurel J. Richie ("Richie"), and Olympia J. Snowe ("Snowe") (collectively, the "Defendants").

The parties have entered into a Stipulation and Agreement of Settlement[1] dated December 12, 2023 (the "Stipulation"), that provides for a dismissal with prejudice of the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement").

The Parties seek the entry of an order: (1) approving the terms of the Settlement as fair, reasonable, and adequate to Synchrony and Current Synchrony Stockholders; (2) fully and finally

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as those set forth in the Stipulation and Agreement of Settlement dated December 12, 2023 (the "Stipulation"). Declaration of Eric P. Smith, Ex. 1, ECF No. 23-1 (Dec. 20, 2023) ("Stipulation").

releasing all Released Claims against the Released Persons; (3) awarding $885,000 in attorney's fees and expenses to Plaintiffs' Counsel[2] and $2,000 Service Awards to each of the two Plaintiffs; and (4) awarding other and further relief as the Court may deem appropriate. Mot. for Final Approval of Settlement at 1, ECF No. 29 (Mar. 4, 2024) ("Mot. for Final Approval").

Upon reviewing the Stipulation and all of the filings, and following a settlement hearing held on April 1, 2024, the Court **GRANTS** the motion for final approval of the Settlement and the Fee and Expense Amount. The Court **FINDS, CONCLUDES,** and **ORDERS** as follows.

## I. BACKGROUND

On January 28, 2019, Mr. Gilbert filed this verified shareholder derivative complaint on behalf of Synchrony, which was originally captioned *Gilbert v. Keane*, No. 3:19-CV-00130. Compl., ECF No. 1 (Jan. 28, 2019).

On March 11, 2019, Ms. Aldridge filed a separate verified shareholder derivative complaint on behalf of Synchrony. *Aldridge v. Keane*, No. 3:19-CV-00369, Compl. ECF No. 1 (Mar. 11, 2019).

On March 26, 2020, the Court directed the Clerk of Court to consolidate the two cases into this single Action. Order, ECF No. 10 (Mar. 26, 2020); Not. of Consolidation, ECF No. 13 (Mar. 26, 2020).

On December 3, 2020, the Parties filed a joint motion to stay the Action pending final resolution of the Securities Class Action, which the Court granted on December 4, 2020. Joint Mot. to Stay, ECF No. 15 (Dec. 3, 2020); Order Granting Joint Mot. to Stay, ECF No. 16 (Dec. 4, 2020) ("Order Staying Case").

On August 6, 2023, the Court issued an order lifting the stay in light of its order granting final approval of the settlement in the Securities Class Action. Order Lifting Stay, ECF No. 17 (Aug.

[2] Plaintiffs' Counsel includes Faxon Law Group, LLC ("Faxon Law Group"), The Brown Law Firm, P.C. ("Brown Law Firm"), and The Rosen Law Firm, P.A. ("Rosen Law Firm").

6, 2023).

On December 20, 2023, Plaintiffs filed a motion for preliminary settlement approval. Mot. for Prelim. Approval of Settlement, ECF No. 22 (Dec. 20, 2023).

On December 21, 2023, the Court granted the motion for preliminary settlement approval and: (a) preliminarily approved the Settlement, as set forth in the Stipulation, as being fair, reasonable, and adequate; (b) ordered that notice of the proposed Settlement be provided to Synchrony stockholders; (c) provided the stockholders with the opportunity to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement for April 1, 2024. Order Granting Preliminary Settlement Approval, ECF No. 24 (Dec. 21, 2023) ("Preliminary Approval Order").

On February 28, 2024, Defendants' Counsel filed a declaration confirming that Defendants provided a copy of the Notice of Pendency and Proposed Settlement of Stockholder Derivative Action, Declaration of Eric P. Smith, Ex. C, ECF No. 23-1 (Dec. 20, 2023) ("Notice"), and the Stipulation in accordance with ¶ 5 of the Preliminary Approval Order, including posting a copy of the Notice and the Stipulation on the Investor Relations page of Synchrony's website, publishing the Summary Notice of Pendency and Proposed Settlement of Stockholder Derivative Action, Declaration of Eric P. Smith, Ex. D, ECF No. 23-1 (Dec. 20, 2023) ("Summary Notice"), in *Investor's Business Daily*, and publishing the Summary Notice in *USA Today*. Declaration of Jared Gerber, ECF No. 26 (Feb. 28, 2024) ("Gerber Decl.").

On March 4, 2024, Plaintiffs filed a motion for final approval of the Settlement. Mot. for Final Approval; Mem. in Supp. of Mot. for Final Approval of Settlement, ECF No. 29-1 ("Mem.").

Also on March 4, 2024, Plaintiffs' Counsel filed a declaration in support of Plaintiffs' motion for final approval of the Settlement. Declaration of Timothy Brown, ECF No. 30 (Mar. 4, 2024) ("Brown Decl.").

On March 25, 2024, Plaintiffs filed a notice of no objectors in support of their motion for final approval of settlement. Not. of No Objs., ECF No. 34 (Mar. 25, 2024) ("Not. of No Objs.").

On April 1, 2024, the Court conducted a hearing (the "Settlement Hearing") to consider, among other things, (1) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to Synchrony and Current Synchrony Stockholders, and should therefore be approved; and (2) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants.

This Ruling and Order incorporates and makes a part hereof: (1) the Stipulation filed with the Court on December 20, 2023; and (b) the Notice and the Summary Notice, also filed with the Court on December 20, 2023.

## II. STANDARD OF REVIEW

### A. Settlement Approval

"A derivative action may be settled . . . only with the court's approval." Fed. R. Civ. P. 23.1(c). For the Court, "[t]he central question . . . is whether the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "[I]n the context of a derivative action settled on behalf of the class of all shareholders, this [question] requires consideration, in particular, of whether the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interests of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to "the likely rewards of litigation[.]" *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011) (internal citations omitted).

To ensure procedural fairness, "[a] court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from "arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged

in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quoting *Weinberger*, 698 F.2d at 74).

To review a settlement for substantive fairness—for whether a settlement is fair, reasonable, and adequate—"the court is primarily concerned with 'the strength of the case for plaintiffs on the merits balanced against the amount offered in settlement.'" *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302 (SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974)).

### B. Attorney's fees

In light of the corporate benefits conferred by the Settlement, "the Court's determination of whether plaintiffs' counsel's requested fee award is reasonable is guided by the factors set forth by the Second Circuit in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d at 343. The six factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d at 343 (citing *Goldberger*, 209 F.3d at 50).

## III. DISCUSSION

As a preliminary matter, this Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Shareholders. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 380 (2016) ("Like the Third Circuit, we read § 27 as conferring exclusive federal jurisdiction of the same suits as 'aris[e] under' the Exchange Act pursuant to the general federal question statute." (citing 28 U.S.C. § 1331)); *In re Bristol-Myers Squibb Derivative Litig.*, No. 02 Civ. 8571 (LAP), 2007 WL 959081, at *6 (S.D.N.Y. Mar. 30, 2007) ("[D]efendant . . . is subject to personal jurisdiction in this

District based on its substantial operations within this District."); *Messinger v. United Canso Oil & Gas Ltd.*, 80 F.R.D. 730, 734 (D. Conn. 1978) ("Unlike the truly adverse claims stated against 'real' defendants . . . the naming of the derivative corporation as a party defendant raises no potentially harmful consequences for the corporation, because plaintiff is acting solely for the corporation's benefit. Due process is therefore satisfied so long as the corporation has notice of the suit.").

As outlined below, the Court finds that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Shareholders. The Court further finds the Settlement to be the product of extensive arm's length negotiations conducted by highly experienced counsel.

The Court therefore approves the proposed Settlement.

**A. Notice**

"Notice of a proposed settlement . . . must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Here, a copy of the Notice and the Stipulation was posted on the Investor Relations page of Synchrony's website, Gerber Decl. ¶ 6, a copy of the Summary Notice was published in *Investor's Business Daily*, *id*. ¶ 7, and a copy of the Summary Notice was published in *USA Today*, *id*. ¶ 8. Thus, notice in this case was undertaken consistent with the Court's Preliminary Approval Order. *See In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *6 (S.D.N.Y. Sept. 6, 2006) (finding that the "distribution of notice was consistent with the direction of the Court and adequately satisfied due process" where the plaintiffs distributed notices and published a summary notice in two nationally available newspapers).

Accordingly, the Court finds that the notice requirements under Rule 23.1(c) of the Federal Rules of Civil Procedure were met.

**B. Final Approval of the Terms of the Settlement**

"In determining whether a settlement is fair, reasonable, and adequate, the District Court examines the 'negotiating process leading up to the settlement[, *i.e.*, procedural fairness,] as well as

the settlement's substantive terms[, *i.e.*, substantive fairness].'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009) (quoting *D'Amato*, 236 F.3d at 85) (alterations in *McReynolds*).

First, the Court "must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (first citing *McReynolds*, 588 F.3d at 803–04; and then citing *D'Amato*, 236 F.3d at 85). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Manual for Complex Litigation*, Third § 30.42 (1995)).

Here, the Court finds that presumption is met.

As consideration for the Settlement, Synchrony's Board of Directors agreed to implement corporate governance reforms for a period of no less than three and a half years. Brown Decl. ¶ 8. Following the Parties' agreement in principle, they participated in a full-day, private mediation and engaged in good faith, arm's length negotiations as to the attorney's fees and expenses (the "Fee and Expense Amount") to be paid to Plaintiffs' Counsel. *Id.* ¶¶ 9, 79. For the mediation, the Parties engaged a nationally reputed mediator from Phillips ADR. *Id.*; Stipulation § I.C. That the negotiations included active participation by an experienced mediator supports finding that the Settlement is procedurally fair. *See, e.g.*, *D'Amato*, 236 F.3d at 85 (stating that a mediator's involvement in settlement negotiations "helps to ensure that proceedings were free of collusion and undue pressure").

Additionally, the Settlement "was negotiated between and among experienced and sophisticated counsel . . . ." Brown Decl. ¶ 53. Defendants were represented by Cleary Gottlieb Steen & Hamilton, a leading corporate defense firm. *Id.* ¶ 54. Plaintiffs' Counsel, Brown Law Firm, is a

complex business litigation firm that specializes in shareholder derivative litigation. Brown Decl., Ex. A at 2. Plaintiffs' Counsel, Rosen Law Firm, is currently lead counsel in numerous securities class actions. *Id.*, Ex. B, Ex. 1 at 23–26. And Partner Phillip Kim served as Assistant Corporation Counsel for the City of New York in the Special Federal Litigation Division and currently focuses his practice on securities class actions and shareholder derivative litigation. *Id.* at 7. Plaintiffs' Counsel, Faxon Law Group, has handled many complex litigation and class action matters in Connecticut and specializes in commercial litigation, among other things. *Id.*, Ex. C, Ex. 1 at 11.

Further, under the terms of the Court's order staying the Action, Defendants were required to provide Plaintiffs with any written discovery produced in the Securities Class Action or any related derivative action. Brown Decl. ¶ 23. Also, Plaintiffs' Counsel conducted an extensive investigation, including reviewing and analyzing Synchrony press releases, U.S. Securities and Exchange Commission filings, and reviewing tens of thousands of pages of confidential internal corporate documents produced by Defendants. *Id.* ¶ 79; Stipulation § II. Therefore, "meaningful" discovery has occurred. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("[W]hile no formal discovery was conducted in this case, plaintiffs were afforded several opportunities to extensively review records provided by the Austrian Banks . . . . Therefore the Settlement enjoys a presumption of [procedural] fairness."), *aff'd sub nom. D'Amato*, 236 F.3d at 85–86 (rejecting appellants' argument that counsel misrepresented the importance of the Austrian Banks' agreement to provide access to documents, and finding that "the District Court in this case examined the negotiation process with appropriate scrutiny"); *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *3 (S.D.N.Y. May 22, 2018) (finding the settlement entitled to presumption of procedural fairness where "settlement negotiations included the exchange of tens of millions of rows of Spotify's data and work by experts on both sides to evaluate the settlement value of the case"); *cf. Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982) ("Although

negotiations in the instant case were conducted by undesignated class representatives without formal pretrial discovery, this, standing alone, did not preclude judicial approval.”).

Accordingly, the Court finds that the Settlement was “reached in arm’s-length negotiations between experienced, capable counsel after meaningful discovery[,]” *Visa U.S.A., Inc.*, 396 F.3d at 116, and the presumption of procedural fairness has been met.

Next, “[i]n the context of shareholder derivative litigation, several of the factors enunciated in *Grinnell* inform the Court’s evaluation of whether a settlement is fair, reasonable, and adequate: (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to the proposed settlement.” *In re AOL Time Warner S’holder Derivative Litig.*, 2006 WL 2572114, at *3 (citing *In re Metropolitan Life Derivative Litig.*, 935 F. Supp. 286, 292 (S.D.N.Y. 1996); *Grinnell Corp.*, 495 F.2d at 463).

The Court makes the following findings and concludes that the balance of the *Grinnell* factors weighs in favor of approving the Settlement Agreement.

*i. Reasonableness of the Benefits Achieved by the Settlement in Light of the Potential Recovery at Trial*

“[I]n any case there is a range of reasonableness with respect to a settlement[—]a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.” *In re Fab Universal Corp. S’holder Derivative Litig.*, 148 F. Supp. 3d 277, 281 (S.D.N.Y. 2015) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). “[I]n derivative actions where the harm done is to the corporation, a monetary benefit is not necessary for settlement approval.” *Id.* (citing *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 395 (1970)).

The benefits achieved here are the corporate governance reforms tailored to strengthen Synchrony's disclosure controls, oversight, risk assessment practice, and overall corporate governance, and to address the specific deficiencies and misconduct relating to Synchrony's loan portfolio, risk management and disclosure controls. Brown Decl. ¶ 32.

Accordingly, the first *Grinnell* factor supports approval of the settlement. *See In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 281 ("Such reforms that directly address the issues that gave rise to suit are exactly the type that courts deem to confer a substantial benefit on the company. The benefits achieved in this settlement are therefore substantial and reasonable, particularly in light of the 'range of reasonableness' standard." (citation omitted)).

*ii. Likelihood of Success in Light of the Risks Posed by Continued Litigation*

"Without the benefit of a fully developed record, courts must heed the Supreme Court's admonition not to 'decide the merits of the case or resolve unsettled legal questions.'" *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *5 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "Rather, 'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Id.* (quoting *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)).

"In analyzing the risks of continued litigation and the likelihood of Plaintiffs' ultimate success, '[t]he doctrine of demand futility, the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs.'" *In re CPI Aerostructures S'holder Derivative Litig.*, No. 1:20-CV-2092 (ENV) (CLP), 2023 WL 2969279, at *8 (E.D.N.Y. Feb. 14, 2023) (footnote omitted) (quoting *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 281–820); *see also In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 282 ("A number of risks are posed by continued litigation, while settlement assures broad corporate reform.").

Here, Plaintiffs faced the challenge of, among other things, establishing demand futility and that the Defendants who were directors acted in bad faith. *See In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366, 382 (S.D.N.Y. 2013), *aff'd sub nom. Welch v. Havenstein*, 553 F. Appx. 54 (2d Cir. 2014) (stating a claim for failure of oversight requires "particularized factual allegations demonstrating bad faith by the director defendants") (quoting *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009)); *id.* at 376 ("A shareholder's right to bring a derivative action does not arise until he has made a demand on the board of directors to institute such an action directly, such demand has been wrongfully refused, or until the shareholder has demonstrated, with particularity, the reasons why pre-suit demand would be futile.'" (quoting *Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, at *11 (Del. Ch. May 9, 2006) (alteration omitted)).

And similar to the procedural posture in *In re Fab Universal Corp. S'holder Derivative Litig.*, "[t]his case has not undergone substantive motion practice, and it is therefore even less clear that Plaintiffs will be meritorious in establishing liability than in other instances where settlement is reached after extensive adversarial proceedings." 148 F. Supp. 3d at 282.

Accordingly, the second *Grinnell* factor supports approval of the settlement.

*iii. Likely Duration and Cost of Continued Litigation*

This litigation began on January 28, 2019, and as noted above, has not undergone substantive motion practice. As such, fully litigating this case would require several more years at a cost to the Company. *See In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 293 (S.D.N.Y. 1996) ("Continued litigation of this case would put a strain on all the parties. This consolidated federal case is already substantially more than two years old. . . . If these cases must be litigated, several more years of litigation would be required."); *see also In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *5 ("Termination of the litigation at this stage of the proceedings 'obviat[es]

the expenditure of any future time and expense in connection with this action,' and will allow the Company to direct its full attention to its substantive business." (quoting *Mathes v. Roberts*, 85 F.R.D. 710, 714 (S.D.N.Y. 1980))).

Accordingly, the Court finds the third *Grinnell* factor weighs in favor of approval.

*iv. Shareholder Objections to the Proposed Settlement*

"The reaction of shareholders may be gauged by reference to the extent of objection to the settlement. In the context of class actions, courts in this Circuit have noted that 'the lack of objections may well evidence the fairness of the Settlement.'" *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *6 (quoting *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)). "The same principle applies to shareholders' approval of a derivative settlement." *Id.*

On March 25, 2024, Plaintiffs filed a notice informing the Court that no objections to the Settlement, Plaintiffs' Counsel's application for attorney's fees and expenses, or Plaintiffs' Service Awards had been served on Plaintiffs' Counsel or filed with the Court. Not. of No Objs. at 2.

Accordingly, this *Grinnell* factor weighs in favor of approval. *See Menkes v. Stolt-Nielsen S.A.*, No. 3:03-CV-00409(DJS), 2011 WL 13234815, at *3 (D. Conn. Jan. 25, 2011) ("[T]he complete absence of opposition . . . favors approval of the proposed settlement.").

As a result, the *Grinnell* factors—taken as a whole—support finding the settlement substantively fair, reasonable, and adequate.

The Court therefore approves the Settlement Agreement and next considers the application for attorney's fees and expenses.

**C. Attorney's Fees and Expenses**

"An award of counsel fees is justified in a shareholder derivative action 'where the derivative action results in a substantial non-monetary benefit to a corporation.'" *Allred on behalf of Aclaris*

*Therapeutics, Inc. v. Walker*, No. 19-CV-10641 (LJL), 2021 WL 5847405, at *5 (S.D.N.Y. Dec. 9, 2021) (quoting *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 283); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d at 343 ("[I]t is well-established that plaintiffs who confer a corporate benefit may be awarded attorneys' fees and expenses under Delaware law." (citing *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989))).

Here, the Settlement creates benefits for Synchrony through the reforms addressing the wrongdoing Plaintiffs alleged. Brown Decl. ¶ 7; Stipulation § 4.1. Additionally, the Parties negotiated the Fee and Expense Amount, $885,000 to be paid by Synchrony's insurers to the escrow account of Brown Law Firm, with the assistance of a mediator and after the material substantive terms of the Settlement were determined. *Id.* ¶¶ 82–83; *see also Allred on behalf of Aclaris Therapeutics, Inc.*, 2021 WL 5847405, at *5 (collecting cases) ("The few courts that have considered the issue over the years have held that great, and potentially dispositive, weight should be given to a fee amount not to be paid from a common fund negotiated at arm's length between sophisticated counsel after the substantive terms of a settlement have been agreed.").

Considering the *Goldberger* factors, "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations[,]" *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d at 343 (citing *Goldberger*, 209 F.3d at 50), the Court finds that the requested attorney's fees are reasonable.

First, Brown Law Firm expended 739.5 hours on this Action, Rosen Law Firm expended 64.6 hours, and Faxon Law Group expended 37 hours for a total of 841.1 hours. Brown Decl. ¶ 97. This time was spent on numerous tasks, including conducting research; drafting the Complaints and subsequent motions; analyzing Synchrony's press releases, public statements, filings with the SEC, securities analysts' reports and advisories, and media reports about Synchrony; reviewing the

pleadings and attending proceedings pertaining to the Securities Class Action; reviewing tens of thousands of pages of confidential internal corporate documents produced by Defendants; engaging in settlement negotiations with Defendants' counsel; negotiating and drafting the Memorandum of Understanding and the Stipulation; and attending the full-day mediation session. Brown Decl. ¶ 96. For the 841.1 hours expended, Plaintiffs' Counsel incurred $584,917.50 in attorney's fees, and reasonably seek, in net attorney's fees, a total of $866,252.43, a lodestar multiplier of 1.48. *Id.* ¶ 97; Mem. at 37; *see also In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 283 ("A lodestar multiplier of 1.35 is sufficiently low that it is reasonable to compensate counsel for the time and labor expended, as well as the risk of litigating an uncertain case under a contingency fee arrangement." (citing *In re Comverse Tech., Inc. Sec. Litig.*, No. 06–CV1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010))).

Second, although the Parties did not directly address the magnitude and complexities of this specific Action, the Court agrees with Plaintiffs, *see* Mem. at 21, that shareholder derivative actions are generally complex. *See In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 283 ("Counsel has provided limited information as to the unique complexities of litigating this action. However, as a derivative shareholder suit, the many defenses available and opportunities to reduce or rebut any findings of liability or damages make this litigation complicated. This factor militates in favor of settlement approval." (citations omitted)).

Third, as discussed above, "[i]n analyzing the risks of continued litigation and the likelihood of Plaintiffs' ultimate success, '[t]he doctrine of demand futility, the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs.'" *In re CPI Aerostructures S'holder Derivative Litig.*, 2023 WL 2969279, at *8 (footnote omitted) (quoting *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 281–820).

Fourth, both Parties were represented by experienced counsel who zealously represented their clients and negotiated "a strong package of valuable corporate therapeutics despite the real challenges Plaintiffs faced in their ability to recover for Synchrony in this derivative litigation, all while avoiding any unnecessary expenditure of resources by Synchrony, the real party in interest." Brown Decl. ¶¶ 91–92.

Fifth, the corporate governance reforms that Synchrony will undertake as a part of the Settlement, including policies designed to strengthen the Company's corporate transparency, risk management, oversight, and disclosure controls, among other improvements, *id.* ¶ 88, warrant a fee award on par with the economic benefit to Synchrony, *see In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 284 ("In the marketplace, assurance of [corporate governance reform] . . . has a monetary benefit for [the company]. This factor therefore weighs in favor of settlement approval.").

Sixth, derivative actions allow "individual shareholders a means to protect the interests of the corporation . . . [,]" *In re Scudder Mut. Funds Fee Litig.*, No. 04 CIV. 1921 (DAB), 2007 WL 2325862, at *10 (S.D.N.Y. Aug. 14, 2007), and fee awards "serve as an incentive for future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis[,]" *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302 (CM), 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010); *see also Allred on behalf of Aclaris Therapeutics, Inc.*, 2021 WL 5847405, at *6. ("Public policy also favors an award of attorneys' fees in derivative actions—which keep corporate directors honest and improve corporate governance." (citing *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 284)).

Finally, "[i]t is well-settled that '[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Bear Stearns Companies, Inc. Sec.,*

*Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)). Plaintiffs' Counsel attests that the $14,747.57 in expenses it incurred "were necessary to effectively prosecute and resolve the case on favorable terms" and "would have been billed in non-contingency matters." Brown Decl. ¶ 99.

Accordingly, Plaintiffs' Counsel are hereby awarded the negotiated Fee and Expense Amount of $885,000, a fair and reasonable sum after considering the factors outlined in *Goldberger*.[3]

## IV. CONCLUSION

For the reasons explained above, upon reviewing the Stipulation and all of the filings, and following a settlement hearing held on April 1, 2024, the Court **GRANTS** the motion for final approval of the Settlement and the Fee and Expense Amount. The Court **FINDS, CONCLUDES,** and **ORDERS** as follows:

1. This Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

2. This Court has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement, and over all Parties.

3. The Court finds that the notice of the Settlement was published and disseminated in accordance with this Court's Preliminary Approval Order. This Court further finds that the forms and contents of the Notice and Summary Notice, as previously preliminarily approved by the Court, fully satisfied the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and the

[3] This sum includes, having considered and deemed reasonable, the two $2,000 Service Awards to be paid from the Fee and Expense Amount. Stipulation § 4.4; *see also In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 285 (determining that a $2,5000 service award was reasonable because the request was minimal, no objection had been made, and because "[c]ourts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012))).

requirements of due process.

4. The Court hereby approves the Settlement set forth in the Stipulation and finds that the Settlement is, in all respects, fair, reasonable, and adequate to each of the Parties, and further finds that the Settlement is in the best interests of Synchrony and its stockholders.

5. The Action and all claims contained therein, as well as all of the Released Claims against Released Persons, are dismissed with prejudice. The Parties are to bear their own costs, except as otherwise provided below.

6. Upon the Effective Date, the Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims against the Released Persons. Plaintiffs' Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Persons with respect to any Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting the Released Claims against the Released Persons except to enforce the releases and other terms and conditions contained in the Settlement and/or this Judgment.

7. Upon the Effective Date, Defendants and Defendants' Counsel shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Defendants' Released Persons from Defendants' Released Claims. Defendants and Defendants' Counsel shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue Defendants' Released Persons with respect to any of Defendants' Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting Defendants' Released Claims against Defendants' Released Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or this Judgment.

8. During the course of the litigation, all parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure, and all other

similar laws or statutes.

9. The Court hereby approves the sum of eight hundred and eighty-five thousand dollars ($885,000.00) for the payment of Plaintiffs' Counsel's attorney's fees and expenses in the Action and finds that the Fee and Expense Amount is fair and reasonable. No other fees, costs, or expenses may be awarded to Plaintiffs' Counsel in connection with the Settlement. The Fee and Expense Amount shall be distributed in accordance with the terms of the Stipulation.

10. The Court hereby approves the service awards of two thousand dollars ($2,000.00) for each of the two Plaintiffs to be paid from Plaintiffs' Counsel's Fee and Expense Amount in recognition of Plaintiffs' participation and effort in the prosecution of the Action.

11. Neither the Stipulation, nor any of its terms or provisions, nor entry of this Judgment, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, may be construed as, or may be used as evidence of the validity of any of the claims released herein or an admission by or against the Defendants of any fault, wrongdoing, or concession of liability whatsoever.

12. Defendants may file the Stipulation and/or the Judgment in any action that has or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction with respect to implementation and enforcement of the terms of the Stipulation.

14. Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, this Court hereby finally approves the Stipulation and Settlement in all respects and orders the Parties to perform its terms to the extent the Parties have not already done so.

15. This Judgment is a final judgment, and the Court finds that no just reason exists for delay in entering the Judgment in accordance with the Stipulation. Accordingly, the Clerk of Court is respectfully directed to enter this Judgment forthwith in accordance with Rule 58 of the Federal Rules of Civil Procedure, and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 5th day of April, 2024.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE